### Case No. 7,411.
JOHNSON v. ROOT.
[1 Fish. Pat. Cas. 351.] [1]
Circuit Court, D. Massachusetts. Oct., 1858.

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

A. C. Washburn and William Whiting, for plaintiff.

Causten Browne, J. E. Maynadier, and George T. Curtis, for defendant.

SPRAGUE, District Judge (charging jury). It is the duty of the court to decide all questions of law which may arise in the progress of the trial, and to give instructions to the jury on those questions. It is the province and duty of the jury to decide all questions of fact; and any observations that the court may make as to the facts in the case are only designed to aid you in applying the law to the facts, and further, perhaps, to aid you, as far as the court may, in arriving at the questions which you are to decide, and the points that it may be material for you to take into consideration, in order correctly to apply the law which shall be laid down to you. And, gentlemen, in a case which has occupied so great a length of time, where the evidence has been so multifarious, both in kind and in detail, it may be of some importance, if we can, to disembarrass the case of considerations not in controversy, and questions not bearing, directly or indirectly, upon points really at issue, or to be decided by the jury. I shall not go into details of the evidence, gentlemen. That is for your consideration. All questions of the force and effect of the testimony, of the credit which you shall give to the witnesses, of the facts which you shall consider to be established, of inferences to be drawn from them, are matters for the jury alone. The law is to be given to you by the court, including the construction of written documents, and especially of the plaintiff's patent, depending, sometimes, however, upon the technical use of terms, if there be such, which have a use different from the usual and ordinary acceptation of the terms, and which may be matters of fact for the jury.

The suit is by Mr. Johnson against Mr. Root, for an alleged infringement of a patent. The patent has been produced, and is prima facie evidence of the right of the plaintiff to all that is contained in it, giving it its true and proper construction. The defense alleges that, in the first place, the defendant has not infringed—that is, has not used the invention which is secured to the plaintiff by his patent. (I shall employ the word "use," gentlemen, although, in strictness, what is complained of is, that the defendant has sold one of the machines embracing the invention of the plaintiff; "use" is a shorter term, and I shall, therefore, employ it.) After stating that he has not used the plaintiff's invention, as secured in his patent, the defendant says, in the second place, that if the machine which he has sold does embrace that which is in the plaintiff's patent, then the plaintiff's patent is not valid, because the plaintiff was not the first inventor. These, gentlemen, are the two grounds of defense, and the two general questions which you will have to determine. First, did the defendant infringe? and, second, if he did, was the plaintiff the first inventor of that which the defendant has used?

And in order, gentlemen, to determine the question which I take up first, because it was the first presented in the order of the trial, in order to determine whether the de-

fendant has used the plaintiff's invention, as secured by his patent, the first step is to ascertain, as clearly as you may, what it is to which the plaintiff has a right, under his patent. And here I would observe that there is no part of the plaintiff's patent which it is alleged the defendant has infringed, except that relating to the feeding of the material to be sewed. There are two other things embraced in his patent, relative to the seam, which, however, you have no occasion to trouble yourself about in the present case, unless they should, in any degree, throw light upon the third claim of his patent—that in relation to the feed. In determining what it is that the plaintiff has secured to him by his patent from the government, the court looks, in the first place, at what is called, technically, the claim, which is the summing up, at the close of the patent, or specincation preceding; the claim being in the terms: "What I claim to have invented, and wish to secure by letters patent, is —," and then a condensed statement of what he wishes to have secured to him by his patent. But in construing that, we take into view the whole of what precedes it in the specification, and also such extraneous facts presented by the evidence, as may aid in giving the true construction to the patent, particularly the documents from the patent office which have preceded the granting of the patent itself. Now, that third claim is for this: "The feeding of the material to be sewed, by means of a vibrating, piercing instrument, either the needle itself, or some other instrument in the immediate vicinity thereof, substantially as herein described." It is upon that this whole controversy turns; it is that claim which embraces all the right that the plaintiff has. I say all the legal right. And here I would observe, gentlemen, that the evidence and the arguments on both sides have, very properly, gone into the inquiry, what was the invention?—what was done by the plaintiff from one time to another? That is all very proper, because it may aid in giving a construction to his patent. But his legal right is that which is secured to him by his patent; and if he has invented any thing else, meritorious or otherwise, still if it is not embraced in the patent, then he can maintain no suit upon it; he is necessarily confined to that which is granted to him by the deed from the government, which is called a patent.

Now, in the first place, gentlemen, this is not a patent for a result. It is not a patent for an abstract idea, or an abstract principle. You take the words of the claim itself to lead you. The object to be obtained is the feeding of the material to be sewed. The means are, a vibrating, piercing instrument. either the needle itself, or an independent instrument in the immediate vicinity thereof, substantially as therein described. Now, this patent is for means—a mechanism to accomplish a certain end. The first thing, then, which you will observe is, what is secured to the plaintiff. In looking at the means and mechanism to secure the end, it is, in the first place, the instrument—a vibrating, piercing instrument. And, to call your attention further to what things are in controversy, you will observe there is no controversy here as to the instrument used by the plaintiff and defendant, each being a vibrating instrument. There is no controversy that it is used in the immediate vicinity of the needle, and, therefore, I shall, for the sake of brevity, and of calling the attention to those matters which are in controversy—speak of it as the "piercing instrument"—the piercing being a matter in controversy. The patent does not stop there. What is embraced in it, and what is the essential part of it, is not merely the feeding of the material by such an instrument, but it is the instrument, followed afterward by the words, "as herein described." Both these are essential parts of this patent.

Upon the question of infringement, then, the inquiry is, in the first place, does the defendant, for the purpose of feeding the material, use substantially the same instrument therein described, and substantially in the manner therein described? If he does not use the same instrument—substantially the same instrument—and when I leave out the word "substantial," you will always understand that it is embraced—if he does not use substantially the same instrument, he does not infringe. If he uses the same instrument, and does not use it substantially in the manner therein described, he does not infringe; both of those going to constitute the invention which the plaintiff has secured to himself. It may thus appear, gentlemen, that if the defendant takes either one of those two, he takes something which belongs to the plaintiff, and, therefore, infringes. But, upon the construction of this patent, that would not be so. Because, if there had been, before this patent, a use of the same instrument, but not used in the same manner, the patent would be good. Therefore it is somewhat analogous—to give a mere illustration of my meaning—to a combination of two elements, both of which must be used, in order to constitute any thing. This is not a combination of two elements; I use the comparison only to illustrate the idea that both must be used.

Now, in inquiring whether the defendant uses substantially the same instrument as that described in the patent, and substantially in the same manner, you will, in the first place, inquire what is the instrument described in the patent? Well, gentlemen, the instruments described are a needle and an awl, called vibrating, piercing instruments—piercing instruments—and those described in the patent are the needle and an awl. Does the defendant use the instrument described in the patent? That is a question of fact for your determination. Then the question is,

does the defendant use the instrument of the plaintiff substantially in the manner described in the patent? The instrument for feeding, as described, is the needle: I think the awl is not described in the patent as feeding; it is introduced, and is one of the instruments named in the patent, but is not described in the operation of feeding. A needle being placed, with proper mechanism, perpendicularly, with the point downward, the material to be sewed being laid on a table beneath the needle, with a hole in the table, under the point of the needle, with a slot, so as to allow the vibration without touching the table, then, by proper mechanism, a force is applied vertically upon the needle, tending to drive it downward, and a force laterally applied at the same time, the needle thus receiving these two forces—the one perpendicular downward, the other lateral—a compound motion, as described, forcing it downward through the cloth, as I shall call the material to be sewed, the needle perforating the cloth and going through, and the point of the needle on the lower surface of the cloth, moving along through, carrying the cloth with it as it moves along laterally, and then after going the length of a stitch, rising, disengaging itself from the cloth, and then returning to the position where it began, in order to take a new hold. Now, gentlemen, you will observe that this produces what has been described to you, without controversy, as a curvilinear motion, and what I understand to be a continuous motion. The needle is described as going through the cloth. (I would here remark that the needle in the plaintiff's patent has two functions, the one that of forming the stitch, the other that of feeding the material to be sewed, and in speaking of it, you will understand that I speak of the instrument in relation to its function as a feeding instrument, unless I specify otherwise, and am intending to describe it to you merely as it is described in the operation of feeding.) Now there has been a good deal of controversy here as to the holding apparatus — whether it is or is not, a part of the feeding mechanism. Gentlemen, so far as the holding mechanism has an effect upon the instrument that feeds, so far is it to be taken into consideration in determining what is the operation of the instrument that feeds. If it modifies or changes the operation of the feeding instrument, you will take it into account. If it changes the character of the feeding instrument, you will take it into account in determining what is that character. There are two things, gentlemen, which—in order not to use terms that have been contended for on the one side or the other—I shall call "adjuncts," which you may take into view in forming your opinion of the operation of the feeding instrument, namely: the table and pressure-foot, as described in the plaintiff's patent. For I am now to lead you to consider what is the plaintiff's patent, as to the operation of the feeding instrument.

One adjunct is the table upon which the cloth is placed. Now, you will observe that the table keeps the cloth in its position, so that when the thrust of the needle is made, the cloth is not carried forward by the force of the needle, it being kept there by the table. But the part of the table directly under the point of the needle has been removed, so that there is nothing to obstruct the downward progress of the needle, and the needle goes through the cloth with no opposing surface against the point. The other adjunct is the pressure-foot, as described in the plaintiff's patent. And that, as I understand it, is a surface of metal, which is pressed downward by a spring, and carried upward by a mechanical force applied to the bar. As described in the patent, the operation is this: The cloth being upon the table, this pressure-foot is placed upon the cloth, one part of the cloth being directly under the point of the needle, the pressure-foot a little distance from it, the pressure-foot keeping the cloth upon the table until the needle has perforated the cloth, as is the language of the patent. Then the pressure-foot is raised by the mechanism which effects that, to allow the cloth to be carried along by the needle in being fed, to allow the formation of the stitch. When the needle rises, the pressure-foot is again permitted to come down, by the action of a spring on the top, for the purpose of keeping the cloth from following the needle up as it rises, and then of keeping it down upon the table until the needle shall have again gone down and perforated the cloth, and then it is relaxed and carried upward, to allow the cloth to pass. And as the description is afterward given, the cloth is carried forward by the needle, and moved in feeding after perforation.

That, gentlemen, I believe is substantially the description of the mode of operation of the feeding instrument, as given in the plaintiff's patent, and the relation that these two things which I have called adjuncts have to it; and you will determine how far they modify or affect the motion of the instrument. Now, the question is, whether the defendant uses in his machine this mode, or has the same mode of operation of a piercing instrument. In the first place, as I have stated it, does the defendant use substantially the same instrument as that described in the plaintiff's as the feeding instrument? If he does not, then he is not guilty of infringement. If he does, then the question is, does he use it substantially in the same manner, substantially in the same mode of operation? In order to determine this question, gentlemen, you must, of course, ascertain what is the defendant's machine, so far as relates to the feeding apparatus. A comparison being required, you must, of course, understand both, in order to make the comparison intelligible. First, then, I would remark that if the defendant uses the plaintiff's patented invention—that which is secured to him by his patent—then he in-

fringes, whatever else he may use, or whatever else he may have added to it. If he has taken that which belongs to the plaintiff, then he is responsible, although he may have added something of his own. If he does not take that which belongs to the plaintiff, then it is wholly immaterial, in this suit, what he takes, or from whom he derives it.

In determining, therefore, as I have observed, whether the defendant uses the plaintiff's patent under consideration, you will look at the machine which has been produced. And here I may remark that there has been a vast deal of evidence of what Wheeler & Wilson, and Grover & Baker, and many other persons use: that is of no sort of consequence in the present case, unless it may aid you in determining what Mr. Root used after the grant of that patent, and before the bringing of this action, some six weeks. One machine is produced, sold by Root to a woman by the name of Johnson, who has been a witness upon the stand, and that has been presented to you.

Now, the comparison you are to make is between that machine which has been presented and the plaintiff's patent. And all the other matters that have been introduced are of no sort of importance, except as they may throw light upon the question, whether that machine marked "K," embodies what was secured to the plaintiff in his patent. And, gentlemen, that is before you. It has been described to you so often on both sides, that it can hardly be necessary for me to undertake to describe to you the operation of that machine. You have, then, upon the first question, does he use the instrument—the bar that is presented to you, with the points at the end, or with the roughened surface, or whatever they choose to call them, for I do not designate them except to call your attention to the thing—is that substantially the instrument described in the plaintiff's patent as the feeding instrument?

Then as to its mode of operation. That has been described to you in various ways—the motion upward to engage with the cloth: lateral to carry the material forward: the motion to disengage, and the motion to return laterally to its position again. Then as to the adjuncts generally. There is a pressure-foot, which, as I understand it, goes down opposite to the point of the feeding instrument. You will take this into consideration, gentlemen, as, indeed, you will all other relevant facts, in forming your judgment as to their being substantially the same in their mode of operation.

And here I would remark, gentlemen—not intending to go into any detail of the evidence—that you have several classes of evidence to which to turn your attention. In the first place, your own inspection and observation of the defendant's machine, and of the plaintiff's machine, as illustrated in the model, in the patent, and in the drawing, as a means of forming your judgment.

In the next place, you have the opinion of experts to aid you in forming your opinion upon the subject. Now, gentlemen, with respect to the opinion of experts, I would remark that in general, in the trial of causes in court, witnesses testify only to facts, the jury to form their own opinion from the facts. But there are various classes of cases which depend upon the knowledge of a peculiar art or science for their solution, of a particular business, requiring a peculiar knowledge, in order to form a satisfactory judgment of the question involved; and in this case the law allows testimony to be given by those skillful in the particular art, science, or profession, and permits them to give their opinions, as results which they arrive at from an examination of the questions of fact that are before the jury. And you have in this case gentlemen, three experts on each side, who have presented their opinions. I shall not go into the detail of their opinions. You will, of course, see that you are not bound by their opinions. You must form your own judgment, at last, upon this and upon all the evidence that you have in the cause. They are introduced only to aid you, gentlemen. You will rely upon them so far as you shall think proper to rely upon them. You will consider the opinion of experts, and will take into view the same things, probably, that you would in considering the value of an opinion of a professional man—a lawyer or physician —his ability, his knowledge of the art or profession in which he is engaged; the fairness with which he expresses an opinion; the impartiality of that opinion, and all those considerations which go to create a confidence or a distrust of the opinion which is given. You will take into consideration, also, the reasons that may be assigned by the experts for their opinions.

You have, besides these opinions of the experts, another species of testimony from those who have seen the actual operation of sewing machines, and who have undertaken to give you, not as matters of opinion, but as matters of fact, from their own observation, what they see to be the effect and the operation of the machines.

There is another species of evidence that has been introduced and relied upon, that is, the results of the two machines, when you come to compare them, which may sometimes aid you in determining whether they are substantially the same. Now, if one machine, which is alleged to be an infringement of another, produces a different result, or, in other words, is of greater utility than the preceding machine, it may be some evidence of a difference, a substantial difference between them; and the utility of the one over the other may be so great as to be satisfactory evidence that some new principle is involved, and that it is not substantially the same.

This is sometimes coupled, too, in considering the evidence, with the mechanical dif-

ferences. The mechanical differences may be sufficient to show that the two machines are not substantially the same. The difference of result and utility may be so great as to be satisfactory to the jury. They may be authorized to receive it as satisfactory, if it is of so very high a nature. And it may be that neither of these alone would be satisfactory, yet the mechanical difference and the difference of utility, taken together, may be sufficient to satisfy the mind. I call your attention, gentlemen, to these different particulars, which you may examine, to form your judgment whether the two machines are substantially the same, as to the feeding apparatus, such as I have explained to you, and embraced in the plaintiff's patent. In the question, gentlemen, whether two things are substantially the same or not, the mind naturally seeks for some criterion by which, as far as practicable, to determine whether they are substantially the same. Now, gentlemen, I do not mean to instruct you as matter of law, with respect to the criterion to be adopted. The suggestions that I make to you are for your consideration, such as are often made for the consideration of the jury. You have heard a good deal said, from time to time, in the course of the trial, of one thing in the one machine being an equivalent for another thing in the other machine, or of several particulars in the one being equivalent to several particulars in the other. The term "equivalent," gentlemen, has two meanings, as used in this class of cases. The one relates to the results that are produced, and the other to the mechanism by which those results are produced. Two things may be equivalent, that is, the one equivalent to the other, as producing the same result, when they are not the same mechanical means. Mechanical equivalents are spoken of as different from equivalents that merely produce the same result. A mechanical equivalent, I suppose, as generally understood, is where the one may be adopted instead of the other, by a person skilled in the art, from his knowledge of the art. Thus, an instrumentality is used in a mechanism; you wish to produce a pressure downward: it can be done by a spring, or it can be done by a weight. A machine is presented to a person conversant with machines. He sees that the force applied downward in the one before him, is by a weight; from the knowledge of his art, he can pass at once to another force, the spring, to press it downward; and those are mechanical equivalents. But, gentlemen, there may be equivalents in producing the same results, each of which is an independent matter of invention, and in that sense they are not mechanical equivalents. To illustrate my meaning, suppose, in early days, the problem was to get water from a well to the surface of the earth. One man takes a rope made of grass, and draws up a pail of water; another would see that, as a mechanical equivalent, a rope of hemp would accomplish the same result. But suppose another person comes, and for the first time invents a pump. That is equivalent in the result of bringing the water to the surface of the ground; in that respect it is equivalent, in producing that result, to hauling it up by a rope; but is not mechanically equivalent; it brings into operation, as you know, very different powers and forces, and would require invention to introduce it.

Now, gentlemen, however the appearance of a thing may be altered, if the aspect, the form, the appearance presented are changed only by the use of mechanical equivalents, then it is substantially the same thing, I suppose. That is to say, if a person has an invention, in which he is called upon, by the patent law, to make a full and clear description of the thing he has invented, if another person looking at that, can, from his knowledge of the subject, pass to the other thing that is used, without any invention, that the one is substantially the same as the other. It is not that every unskilled person shall see how they pass; but what is required is, that it shall be so described that those skilled and competent in the art, those who understand it, shall be able (not that an ingenious man can, seeing the new machine, sit down and find something else afterward, perhaps aided in some degree by that in inventing something that is not there, but whether, with a competent knowledge of his art, he will be able), by looking at that with care and examining it, to see that it may be done in a different mode, in a different manner, and it is done in that different mode or that different manner by the use of the knowledge which he has in the art. That would not be a new invention, or substantially differing from the original. But if he is obliged to go to invention, then he has a right to the benefits of whatever he thus invents; and if his invention is a substitution for the original invention, then it is not substantially the same, and he does not use it. But if he merely invents something to be added to it, then he can not take the original invention, because he has made something distinct to add to it, as a new improvement.

If, gentlemen, you should find that the defendant has not infringed, then your verdict will be for the defendant. And here I would observe, that the burden of proof is upon the plaintiff, to show that there has been an infringement. If you should find that the defendant does infringe, then you will pass on to the other inquiry, namely, the question of priority. Gentlemen, for any person to be entitled to an exclusive right, by virtue of a patent, he must be the first, as well as the original inventor. The defendants take this position, gentlemen: that the machine which they use does not infringe; but that if it does infringe, then the plaintiff was not the first inventor of that which is embraced in his patent. And that will bring you to the question whether the plaintiff was the

first inventor. His patent bears date March, 1854. The application for his patent was made in March, 1853. To that date only did he carry back his right by the introduction of his patent.

The defendant then proceeds to introduce evidence upon this question of priority; and, without going over the various matters introduced—which are not material—I would state that, prior to 1853, what I shall, for the sake of discrimination, call the Wilson feed (not meaning to go further as to that than to give it a name), had been used by Wilson, and embodied in a machine, as early, I believe, as 1851—certainly as early as 1852 —and a model of it was deposited in the patent office, embracing the mode of feed that is in the Wilson machine; and it is not controverted that that is substantially the same as in the machine "K," which, it is alleged, infringes the plaintiff's patent. Thus, gentlemen, it is not controverted, as I understand, by anybody, that what was used by the defendant, and is now complained of, was known and used in the machine of Wilson as early as 1852; and that this supersedes the plaintiff's patent, unless the plaintiff can carry it forward to an anterior date—before 1852. The question then is, upon this point of priority, whether the plaintiff does, by his evidence, carry his invention, so far as relates to the feed embraced in his patent, to a date prior to that of Wilson. And here he relies upon the caveat of 1848, and the red model in which that invention was exhibited. It is not contended, gentlemen, that any thing was done between the autumn of 1848 and the use by Wilson, in his machine, of 1852, of the feed used by the defendant, except what is shown by the caveat, and the model of 1848.

Then, gentlemen, your inquiry is this: Was the caveat of 1848, as illustrated by the red model, the invention which is embraced in the plaintiff's patent? and then, if it is, is the plaintiff entitled to it? These are the various questions that are involved. This brings you to the question of what that caveat of 1848 was. You will examine that, and see what it describes. You have the model of it before you; and I do not intend anything more than merely to call your attention to the subject at present, and shall go into no particular description of it. The first question is: Was that perfected?—it being objected that it was not perfected by Mr. Johnson in 1848, nor until about the time that he took out his patent, or made his application for a patent. Now, gentlemen, if it was not perfected then, another inquiry would arise upon the question, whether he would be entitled afterward to put it into his patent; and that is, whether he had invented the feeding mechanism, and was using due diligence to perfect it? Was it perfected? It is not, gentlemen, merely the question whether the feeding apparatus, looked at as a distinct and separable matter

was perfected, but whether, in connection with the machine or invention which he was making, the whole was perfected within the eye of the law. And here you will observe, too, that by being perfected, in the eye of the law, it is not meant that it should be carried to a point where there could not be any subsequent improvement—that it should have been made then as good as it could possibly be made, as a practicable machine, but that the invention should be completed so as to be of some practical utility. It need not be of any high degree—if it is of any practical utility—although of a very low degree—and has been completed so as to be of practical utility, and considered as completed, then it may be said to be perfected in the eye of the law.

Now, gentlemen, I have observed to you that it is not sufficient that some part incorporated into an invention should have been thus perfected, so that it did not require further alteration unless that part could be a machine, so as to be of some practical utility. It would not be sufficient. It must be embodied and connected with a machine which, as a whole, taking that part, must be of some practical utility, in order to prevent other people, coming afterward, from having the benefit of an invention which embraces that, and perfects a machine that renders that useful. For it may often happen that a person in pursuit of an invention goes a certain distance, makes certain parts of an invention but fails of arriving at any practically useful result, and the whole falls to the ground. Somebody else comes afterward and takes up the invention, and may incorporate into his invention something found by somebody before; but if that somebody has never perfected that part, in the eye of the law, as I have explained to you, the second is not to be prevented from having the benefit of that which has been left without practical fruit.

Now, gentlemen, was that perfected? That is a question of fact, upon the evidence, for you to determine. In the first place, you will look at the caveat in which it is described. It is contended, on the part of the defendants, that the caveat itself is conclusive evidence that that invention was not perfected. You will observe that the application which is in the caveat before you, made to the patent office by Mr. Johnson, for leave to file a caveat, sets forth that he has made a certain new and useful improvement in the sewing machine, and that he is then making experiments to perfect it, and asks leave to file a caveat to secure it. The defendant insists that that application is of itself conclusive evidence that he has not perfected it. We will look at it, gentlemen, and see. I do not instruct you that it is conclusive evidence; but it is evidence for you to take into view, in connection with the other evidence, and in connection with the other parts of the same instrument, in which

he begins by saying that he has made a new and useful invention in the sewing machine. Now, gentlemen, although a caveat is understood to be, and in this instance is, filed in order to allow the party to perfect his machine, yet if, in point of fact, the invention had been perfected, in the eye of the law, as I have explained to you, then, if you are satisfied of that from the evidence, you may deem it, for the purposes of this trial, as perfected. Or it may happen that a person may choose to file a caveat while he is going on and making improvements upon an invention which he has already completed, so as to be of practical utility. Therefore, gentlemen, I would say to you, that you will take into consideration the declaration of the plaintiff himself, in the application, that he had made a new and useful improvement in sewing machines, and the further declaration, that he is making experiments in order to perfect his invention, and the subsequent declaration that he has made a new and useful improvement in sewing machines, and the other evidence in relation to the case—that is, what is described in the caveat and the model which was made in 1848—and see if that exhibits to you a perfected machine; and then such further evidence as you have, as, of the actual operation of the machine that will be before you.

Now, gentlemen, if he had perfected it, then he had a right to embrace it in a patent that he should afterward take out. If he had not perfected it, then another question will arise, and that is, had he invented the feeding mechanism at that time, and did he use diligence to perfect that and put it into a perfect machine, so as to make it of some practical utility? In considering this question of reasonable diligence, it is not sufficient to answer that he used diligence in relation to some other invention or machine. The question is: Did he use diligence in perfecting that invention which he has made of the feeding apparatus? And in considering that, gentlemen, you will take into consideration the evidence in the case. Soon after he filed his caveat, which I think was early in November, 1848, it appears that, on his return from Washington, he wrote a letter to Mr. Elliot his agent, and in that letter he spoke of an improvement in the use of the needle as I understand it, for the forming of the stitch, which he thought he had made since he left Washington. This letter was in the latter part of November, 1848, if I recollect right. I do not understand that this makes an illusion to any improvement in relation to the feed apparatus; it is only that he dispenses with the carrying of one of the needles through the cloth; and in that letter he remarks that he thinks this will be an improvement as to the forming of the stitch, and that the only inconvenience is, that it will require a different mode of feed, by ceasing to apply the pow-

er directly to the cloth, and applying it to the clamp, or other instrumentality, that is to carry the cloth through with it. The mode often explained to you, of the feeding, by a caveat, before the supplementary letter, was by carrying the needles on each side, the cloth being held in a circular clamp. The other clamp had nothing to do with this, because that carried the cloth with it, the needle carried the cloth along, and the cloth carried the clamp along with it, by the motion of the needle.

Now, in considering the question of diligence you will look at the facts, and say whether he did use diligence up to the time of obtaining his patent, in perfecting any machine in which could be incorporated his feeding mechanism, as before. And in that you will consider the length of time, and whether he had left that and deserted it for something else; and in that case you will consider what that something else was; whether he left it for the purpose of relinquishing, abandoning its pursuit, so that he did not use all reasonable diligence, and left it until after he had seen the machine of Wilson in the patent office, which he did in 1852, and also in Mr. Potter's hands, at the hotel. You will take into consideration all the other facts and circumstances—what Mr. Johnson was doing—what diligence he used, and form your opinion whether he used due diligence to perfect that as a feeding mechanism, and make it of any practical utility.

If, gentlemen, the invention was perfected, as I have already said, or, if not perfected, if Mr. Johnson used reasonable diligence to perfect it, then he had a right to have it incorporated into his patent, and to supersede those that had intervened between his first invention or discovery and the subsequent taking out of his patent. If he had not perfected it, and did not use due diligence to carry it into effect, and, in the mean time, before he got his patent, somebody else had invented and used, and incorporated into a practical, useful, machine, that mode of feeding, then he could not, by subsequent patent, appropriate to himself what was thus embraced in the former machine, between his caveat and the obtaining of his patent.

I have said, gentlemen, that he could incorporate it into his patent under those circumstances, if he had complied with either of those requisites. The next question is (if you shall find that he could) whether he did incorporate it into his patent, and how far it is embraced in his patent. For, if he did invent it, and had a right to a patent for it, if he did not take a patent for it, then he has no exclusive right, and can not prevent other persons from a use of it; it is only for what he has patented that he has an exclusive right. You will, then, look at the patent—at the true construction of it, and see how far the patent

is the same with the invention in the caveat of 1848; how far one is embodied in the other.

You will observe here, gentlemen, that in the caveat of 1848, nothing is said of an awl; that was not introduced until the patent of 1853, as I shall call it, for the application was made at that time. The feeding was by means of a needle, as described. And here again, gentlemen, you observe that the needles in that had two functions. So far as is material in the present inquiry, we are to regard only the function of feeding. I believe, gentlemen, that was performed by the material being held in the circular clamp—I say the circular clamp, because the straight clamp was fed in a different mode, and not by the needles, and therefore I need not dwell upon that for a moment; the needle feed was effected by putting the material into the clamp, by which it was held, and then the needles passing through, one on the one side, and the other on the other, and each needle successively carrying the cloth forward the length of the stitch; the needles going through the cloth, each of them, then the feeding needle carrying it along, then drawn out of the cloth and returning to the place at which it began.

Now, gentlemen, if the plaintiff has embraced that, and so far as he has embraced that in his patent, he would have a right to it, under the conditions, and complying with the requisites, I have stated to you. Then the question would arise, does the defendant infringe that—for it may happen (I do not say it did; that is a matter entirely for your consideration) that the patent of the plaintiff may be in some respects different from the invention as developed in the caveat of 1848. Now, as the plaintiff's patent is subsequent to the use of the defendant's machine by Wilson and others, when he would carry his invention forward to a time anterior to its use by Wilson and others, he could have the benefit only of that which he had discovered and invented prior to 1852, when Wilson used it. The question then is, does the defendant infringe the invention of 1848, as incorporated into the patent of Mr. Johnson of 1854? Here, gentlemen, you will have to make the same comparison; and you will observe that the question of the law is here out of view. Whether that was a substantial change or variation from the caveat or not, it is out of view here; because it was not in that caveat—the needles only were there. Then the inquiry is, upon the same principles that I have already presented to you from the beginning, upon the question of infringement; does the defendant, in the machine "K," use the invention of feeding, being described in that as a needle, and the mode of operation described as in the caveat, and in the red machine? That is the question. If he does not so in-

fringe, if the plaintiff had no right to have it in his patent, and has it in his patent, or has it not in his patent, then he is not guilty.

If you find for the plaintiff, gentlemen, another question will arise, and that is the amount of damages. That I hardly think it necessary to discuss at all. If the defendant has taken what belongs to the plaintiff, and used it wrongfully, you will give to the plaintiff some damages. No large amount is asked by the plaintiff, and there is no controversy upon that point. The great inquiry is, as stated by the counsel, the question of right. The only evidence directly to the point is, that no machine, here introduced, has been sold; and there is no direct evidence that Mr. Root sold any other machine than this one, embracing the plaintiff's invention. There is some evidence, I believe, from Mr. Howe, that Mr. Root sold some other machines, but Mr. Howe does not undertake to say, as I understand, whether they embraced this feed-motion. Perhaps he did, but the plaintiff's counsel, in his closing remarks, asked only for two or three hundred dollars, and I do not think it necessary to spend time examining that point. You will consider it, and act according to your judgment, if you should come to that question.