FRESNO HOME–PACKING CO. et al. v. FRUIT–CLEANING CO. et al.

(Circuit Court of Appeals, Ninth Circuit. May 7, 1900.)

No. 558.

1. PATENTS—VALIDITY—ISSUANCE TO PARTNERSHIP AS ASSIGNEE.

Under Rev. St. § 4895, which provides that letters patent may be issued to the assignee of the inventor, a partnership may, in its firm name, become the assignee of an inventor's inchoate right to a patent; and, upon a compliance with the requirements of the statute, a patent issued to it as such assignee is valid, although the partnership name is purely artificial, and does not contain the name of any partner.

2. SAME—INFRINGEMENT—FRUIT-SEEDING MACHINE.

The La Due patent, No. 543,834, issued to the Fruit-Cleaning Company, assignee, for improvements in mechanism for seeding fruit, construed, and *held* infringed as to claims 2, 3, 4, and 5, and not infringed as to claim 1.

Appeal from the Circuit Court of the United States for the Northern District of California.

Wheaton & Kalloch, for appellants.

Tracy, Boardman & Platt (John H. Miller and Timothy D. Merwin, of counsel), for appellee.

Before GILBERT, Circuit Judge, and HAWLEY and DE HAVEN, District Judges.

DE HAVEN, District Judge. This is an appeal from a decree of the circuit court for the Northern district of California. The action was brought by the appellee, the Fruit-Cleaning Company, for infringement of letters patent No. 543,834, for "improvements in mechanism for seeding fruit," issued to the appellee, as assignee of George C. La Due. The decree adjudged the patent valid, and that appellants had infringed the first five claims thereof, and also perpetually enjoined them from further infringing said claims. 94 Fed. 845. It is alleged in the bill of complaint that one George C. La Due was the original and first inventor of the invention described in the letters patent, and that he filed in due form in the patent office of the United States his application praying for the granting and issuing of letters patent of the United States for such invention; that, prior to the granting of the patent, La Due assigned and transferred to the complainant the Fruit-Cleaning Company his "right, title, and interest in and to the said invention," and in the assignment

requested the commissioner of patents to issue to the said Fruit-Cleaning Company such patent as might be granted; and it is further alleged that said assignment was in writing, and "filed in the patent office of the United States prior to the granting and issuance of any patent for said invention." The bill also alleges that on July 30, 1895, letters patent numbered 543,834 were issued in due form of law to the Fruit-Cleaning Company for the invention referred to, and that said company was at the date of filing the bill of complaint the owner and holder of said letters patent; that the respondents, who are appellants here, were infringing upon the exclusive rights secured to that company by such letters patent; and that the Fruit-Cleaning Company is, and was at all of the times referred to in the bill, a co-partnership, of which Alfred Nicholls, George E. Lewis, and Charles F. Allen were and are the members. The bill was not demurred to. The answer denies the alleged infringement, but admits that La Due filed in the patent office of the United States his application for letters patent for the invention claimed by him, as set forth in the bill of complaint, and that prior to the issuance of such letters patent he duly assigned to the Fruit-Cleaning Company all his right, title, and interest in and to said invention, and further admits "that after proceedings had and taken in the matter of said application, and on the 30th day of July, 1895, letters patent of the United States thereunder, dated on that day, and numbered 543,834, were granted, issued, and delivered by the government of the United States to said complainant the Fruit-Cleaning Company. * * *" The answer also contains the further admission that prior to the issuance of the patent "all proceedings were had and taken which were required by law to be had and taken prior to the issuance of letters patent for new and useful inventions." The grounds upon which the appellants rely for a reversal of the decree are: First, that the patent alleged to have been infringed by them is void, for the reason that the Fruit-Cleaning Company, named as grantee therein, is a co-partnership doing business under a name wholly fanciful, and not a natural or artificial person having the legal capacity to receive the grant contained in such letters patent; and, second, that the evidence is not sufficient to show that the appellants infringed any of the claims of such patent.

1. We think it must be conceded that appellants are not estopped by their failure to demur to the bill of complaint, nor by the admissions contained in the answer, from insisting upon the invalidity of the patent in suit, if in fact the patent is void because issued to a co-partnership under its firm name and style, without mention of the name of one or more of the persons composing such firm. It is alleged in the bill of complaint that the Fruit-Cleaning Company is a co-partnership, and the answer does no more than admit that the facts in relation to La Due's assignment of his invention to it, and the subsequent issuance of the patent to that company, are as stated in the bill; and the contention of appellants that upon such admitted facts the patent issued to the Fruit-Cleaning Company is absolutely void, for the reason above stated, is one of law which is open for consideration upon this appeal, and must be decided upon

its merits. The argument of appellants in support of their position is, in substance, this: Starting with the general proposition that the exclusive right to make, use, and sell an invention is one that can only be created or granted by letters patent, they next insist that the patent in suit is without a grantee, and therefore void. This latter contention is based upon the fact that the Fruit-Cleaning Company, named as grantee in the patent, is not a person or corporation, but only the name and style under which certain persons are carrying on business as co-partners; and it is claimed that a co-partnership, as such, and more particularly when its firm name is wholly fanciful, cannot take as grantee in any conveyance which the law requires to be in writing, and consequently that a grant, conveyance, or transfer of real estate, or of rights secured by letters patent, when made to a co-partnership in its firm name, is ineffectual to convey legal title to the firm, or to any individual member thereof whose name is not part of the firm name and style under which the business of the partnership is transacted. The cases of Arthur v. Weston, 22 Mo. 378; Winter v. Stock, 29 Cal. 407; Moreau v. Saffarans, 3 Sneed, 599, 67 Am. Dec. 582; Percifull v. Platt, 36 Ark. 456; Association v. Scholler, 10 Minn. 331 (Gil. 260); Gille v. Hunt, 35 Minn. 357, 29 N. W. 2,—are cited to sustain this conclusion. In Arthur v. Weston, 22 Mo. 378, the question was whether a deed to W. W. Phelps & Co. could be allowed to take effect as a legal conveyance of the land therein described to Phelps, Whitmore, and Cowdry, upon parol proof of the fact that they were the persons composing the firm of W. W. Phelps & Co.; and the court held that it could not, and that the legal title to the land conveyed by the deed was vested in W. W. Phelps alone. The doctrine of this case (and the same may be said of the other cases cited) undoubtedly is that a partnership, as such, is not regarded as a distinct entity, capable of taking the legal title to real estate. But, in our opinion, this rule is not applicable to the present case. The right created or granted by letters patent is, in the language of the supreme court, "plainly an instance of an incorporeal kind of personal property." Machine Co. v. Featherstone, 147 U. S. 209, 13 Sup. Ct. 283, 37 L. Ed. 138. See, also, Shaw Relief-Valve Co. v. City of New Bedford (C. C.) 19 Fed. 753. Now, it is certainly settled that partners may acquire the legal title to personal property under a purchase made in the firm name; and it is not material whether such firm name is wholly fanciful, or whether it contains the names of one or more of the members of the firm. This was expressly so decided in Maugham v. Sharpe, 17 C. B. (N. S.) 443. That was an action at law, and the question involved was whether a certain mortgage or deed of personal property was invalid because made to a partnership in its firm name. The decision of the court was in favor of its validity, and in delivering his opinion in that case it was said by Williams, J.:

"The first question is as to the validity of the deed whereby Dolby assigned the goods in question to the City Investment & Advance Company. It has been objected on the part of the plaintiff that the conveyance is inoperative because it is necessary in a grant that the grantees should be named; otherwise, the grant can, in law, have no operation. I apprehend, however, it is

fully settled that a grant may be good, though the grantee be not named by his Christian or sur name. In Shep. Touch. p. 236, the learned author, after discussing the consequences of a mistake in the Christian name or surname of the grantee, goes on to say: 'And yet, if the grant do not intend to describe the grantee by his own name, but by some other matter, there it may be good by a certain description of the person, without either surname or name of baptism;' for, he adds, 'Id certum est quod certum reddi potest.' In this case, I apprehend, the meaning of the grant is plain. The deed purports and intends to convey the goods to those persons who use the style and firm of the City Investment & Advance Company. They may or may not be a corporation, but, when it is ascertained that those who carry on business under that name are the defendants, the deed operates to convey the property to them."

This, we think, is a proper statement of the rule of law which should be applied in the present case. Section 4895 of the Revised Statutes provides that letters patent may be issued to the "assignee of the inventor" upon compliance with the conditions therein named, one of which is that the assignment must first be entered of record in the patent office. We have no doubt that under this section a partnership may, in its firm name, become the assignee of an inventor's inchoate right to letters patent, and a patent issued to it as such assignee is valid, and vests in the persons composing the firm the legal title to the rights and privileges thereby granted.

2. Upon the question of infringement little need be said, as its decision really turns upon the construction of the particular claims in relation to which infringement was found by the circuit court. These claims are as follows:

"(1) In combination in a machine for seeding fruit, a carrier for conveying the fruit, which is provided with a series of points or teeth spaced to engage the seed of the fruit; a pressure mechanism, the surface of which moves to and from the carrier, and acts to partially impale the fruit upon the carrier; and a puncturing mechanism, the surface of which moves to and from said impaling surface, and acts subsequently to the action of said impaling mechanism, to perforate the skin over the seeds of the impaled fruit for the purpose of uncovering the seed of the fruit. (2) In combination in a machine for seeding fruit, a carrier for conveying the fruit, which is provided with a series of points or teeth spaced to engage the seed of the fruit; pressure mechanism having motion angularly with relation to the carrier, and acting to partially impale the fruit upon the carrier, and by further action to puncture or rupture the skin over the seeds of the impaled fruit, to free the seed preliminarily to removing the same from the body of the fruit. (3) In combination in a machine for seeding fruit, a roll for receiving and conveying the fruit, the surface of which is provided with a series of points or teeth spaced to exclude the seeds of fruit impaled thereon; a pressure roll acting to partially impale the fruit on the carrier teeth, so that they engage the seed preliminarily to removing the same from the pulp; and a brush roll acting to rupture the skin of the fruit lying on, and to force the same off, the seed,— substantially as set forth. (4) In combination in a machine for seeding fruit, a carrier roll provided with a series of points or teeth spaced to exclude the seed of the fruit; a roll acting to partially impale the fruit on the carrier, so that its teeth engage the seed; a roll acting to puncture or rupture the skin of the fruit lying on the seed, and a roll acting to force the punctured skin and pulp of the fruit from around the exposed seed,—substantially as set forth. (5) In combination in a machine for seeding fruit, a carrier roll provided with a series of teeth spaced to engage and exclude the seeds of fruit impaled thereon, and a series of two or more rolls adjusted at different distances from said carrier, and successively acting to partially impale the fruit on the carrier teeth, and rupture and displace the skin of the fruit lying over the seed, preparatory to removing the seed, substantially as set forth."

The specifications and drawings accompanying the patent show that the pressure mechanism referred to in these claims consists of three rolls, designated in the drawings by the figures 12, 13, and 14. These rolls co-act with a central or carrier roll, upon which the fruit is impaled. After describing this central or carrier roll, and its function, the specifications describe the operation and function of rolls 12, 13, and 14 in this language:

"12 is a removable brush roll, journaled in brackets or other like supports fixed to the machine, and which roll is the impaling roll, or the one which forces the fruit upon the teeth of the carrier; the roll being so adjusted relatively to the fruit-carrier surface and the character of its surface, of fiber, bristles, or other yielding substance, being such that the fruit is impaled upon the teeth without being (at least, to any essential extent) ruptured by the action of the roll. 13 is a similar roll, similarly mounted, but adjusted somewhat nearer to the carrier surface; and the bristles or operative surface of this roll may be stiffer or less yielding than that of the roll, 12. The function of this roll is to perforate the skin of the fruit lying over the seeds of the impaled fruit, preliminary to the unimpaled portion of the fruit being pushed from off the seeds. 14 is a similar roll, similarly supported on the frame, the brush or yielding surface of which is adapted to engage the perforated skin of the fruit, and press the same down upon the main body of the fruit; thus leaving the seeds upon the points of the carrier surface, but stripped of the skin and pulp of the fruit."

The machine used by appellants contains a central carrier roll and three laminated rubber rolls. These latter rolls are pressure rolls arranged and adjusted with reference to each other and to the central carrier roll in the same manner as the carrier and pressure rolls are arranged and adjusted in the invention described in the patent in suit. In the machine used by appellants the raisin is impaled upon the central or carrier roll by the first pressure roll, and is then forced further on to the teeth of such carrier roll by pressure successively applied by the other rolls, until the seed is pushed upward through the skin of the raisin; that is, by reason of the successive pressure applied by the different rolls, the seed is made to itself puncture the skin of the raisin. The claim is made by the appellants that the machine used by them does not constitute an infringement of the patent in suit, because it contains no mechanism which punctures the skin of the raisin, and it is insisted by them that such a puncturing mechanism is an essential element of the combination covered by the claims above set out. The question presented is one of construction of these claims, and we are clearly of opinion that a puncturing mechanism, as distinguished from pressure rolls acting in conjunction with the carrier roll, is not an essential element of claims 2, 3, 4, and 5 of the patent in suit, and that the machine used by the appellants infringes upon these claims. We agree with the appellants that claim 1 of the patent calls for a puncturing mechanism. The language of the claim is:

"A pressure mechanism, the surface of which moves to and from the carrier, and acts to partially impale the fruit upon the carrier, and a puncturing mechanism, the surface of which moves to and from said impaling surface, and acts subsequently to the action of said impaling mechanism, to perforate the skin," etc.

The words "puncturing mechanism," as here used, were evidently intended to describe some device or thing different from the pressure

mechanism previously mentioned in the same sentence. The decree will be modified by striking therefrom so much as adjudges that appellants have infringed claim 1 of the patent in suit, and enjoins them from further infringement of said claim 1, and as thus modified the decree is affirmed